United States District Court
Southern District of Texas
**ENTERED**
February 25, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| **Plaintiff/Respondent,** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. 2:17-648** |
| | § | **CIVIL NO. 2:20-129** |
| **MARCUS ANTHONY TUNCHEZ,** | § | |
| **Defendant/Movant.** | § | |

**MEMORANDUM OPINION & ORDER**

Defendant/Movant Marcus Anthony Tunchez ("Movant") has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 83) and memorandum in support (D.E. 84). Now pending is the United States of America's (the "Government") Motion to Deny Relief Under Rule 8(a), 28 U.S.C. Foll. § 2255 (D.E. 90), to which Movant has responded (D.E. 93). For the reasons stated herein, the Government's motion to deny relief is **GRANTED**, and Movant's § 2255 motion is **DENIED**.

**I. BACKGROUND**

On October 11, 2017, Movant was indicted for attempted sex trafficking of a minor, in violation of 18 U.S.C. §§ 1591(a)(1), (b)(1) & (2), and 1594(a). The indictment charged that:

> On or about September 13, 2017, in the Corpus Christi Division of the Southern District of Texas and within the jurisdiction of the Court, the defendant, MARCUS ANTHONY TUNCHEZ, defendant herein, in and affecting interstate commerce, did knowingly recruit, entice, harbor, transport, provide, obtain, and maintain by any means a person, a female hereinafter named Jane Doe, and did attempt

1

> to do so, knowing and in reckless disregard of the fact that means of force, threats of force, fraud, coercion, and any combination of such means would be used to cause Jane Doe to engage in a commercial sex act, and knowing and in reckless disregard of the fact that Jane Doe had not attained the age of 18 years, and would be caused to engage in a commercial sex act.

D.E. 5, p. 1.

Movant requested a bench trial at the final pretrial conference. The parties stipulated to all exhibits, including audio telephone conversations, videotaped undercover meetings, and the respective transcripts. Corpus Christi Police Department (CCPD) Senior Officer Jaime Pelfrey ("Pelfrey") and Department of Homeland Security Investigations (HSI) Special Agent Heath Hardwick testified for the Government, and Movant testified in his own defense. The following facts were presented at the December 14, 2017 bench trial.

During 2016 and 2017, Pelfrey worked undercover for the CCPD narcotics and vice unit, which focused primarily on local sexually oriented businesses and sexually-oriented crimes. As the investigation grew, CCPD, HSI, and the Drug Enforcement Administration (DEA) initiated a joint undercover investigation targeting narcotics trafficking, the sex trafficking of children, and violence by local gang members in the Corpus Christi area. During the undercover investigation, Movant was identified as a Mexican Mafia gang member involved in narcotics trafficking and the sex trade.

Pelfrey purchased methamphetamine from Movant on May 9, 2017, and again on May 10, 2017, after Movant publicly advertised methamphetamine for sale on Facebook. The May 10 transaction took place at a Motel 6 that was known by police for its

connection to prostitution. After negotiating the drug deal, Pelfrey told Movant that he was looking for some prostitutes, but that it was difficult to find them because of the girls' fear of law enforcement. Movant responded, "You are talking about Backpage?"[1] Pelfrey said he was and then repeated that it was hard to find a girl. Movant replied that "he was doing everything" and said he could "hook [the officer] up that way." When asked how much, Movant replied that it was the prostitute's prices not his, but the going rate was $125 for a "quick visit" (oral sex) and $250 for an hour of "full service" (intercourse). When Pelfrey expressed his frustration with having to wait for hours using Backpage, Movant said he had three females working for him and "could take care of that."

Movant next called Pelfrey on August 22, 2017, to discuss a drug deal. During the conversation, Pelfrey told Movant that he had a girl in Louisiana who wanted to come to Texas to "hustle," but only if Pelfrey knew how to "put her up." Movant responded that he could put the girl to work, since prostitution was one of his hustles.

Movant next contacted Pelfrey in a series of three telephone calls on September 12, 2017. During the calls, Movant informed Pelfrey that he needed $300 because he had been robbed of the methamphetamine that he was supposed to bring Pelfrey. The two men also discussed "that Backpage deal," and Movant said they were good to bring down Pelfrey's girl from Louisiana. Pelfrey told Movant that he could loan him the $300, and "[a]ll I want to do is try to set up some business to where I can get these girls working." Movant stated that he had a Backpage account and had "everything set up, ready to go."

---

1. Pelfrey testified that he previously conducted undercover investigations involving Backpage, an internet website well known to law enforcement and the community for purposes of prostitution.

Pelfrey then asked Movant if he had other girls to put with the Louisiana girls to make them feel more comfortable. Movant replied that he had his girl and some other girl, and they had just "posted up at . . . the Red Roof [Inn]," a motel well known for prostitution in Corpus Christi. Movant stated that he would be able to work the girls "for sure" and asked how many girls Pelfrey would bring. Pelfrey said two—his girlfriend and another "young girl" who he had met at a casino. Movant asked Pelfrey whether he had pictures to post on Backpage.[2] Pelfrey responded that he did not have a picture but would bring the girl to let Movant see her.

A few hours later, Movant sent Pelfrey a text message asking what he was doing and followed up with a call. When Pelfrey said that he was in Louisiana, Movant asked if he was bringing the females. Pelfrey confirmed that he would have one girl for sure. Movant said that he would "groom" the girls in the prostitution business. Pelfrey confirmed that the girl from Louisiana had charged $250 the first time he hooked her up with a man, he had seen her "roll guys for $800," and "she talks the game." Movant responded that, if she was as good as Pelfrey said, "then he [Movant] could bump her up and charge more, depending on who his clients are and how he runs the game."

Movant told Pelfrey to call him when he got into town so they could meet and suggested they get something to eat before they did anything. The two men agreed to

---

2.  Pelfrey testified that this question was significant for two reasons: (1) for actual advertisement through Backpage, and (2) so that Movant could see what the girls looked like and determine how much money he thought they would be able to make.

meet at the Whataburger on Baldwin Street, adjacent to the Red Roof Inn.[3] When agreeing to meet at Whataburger, Movant expressly told Pelfrey that "it's not gonna' be like a quick run. You hear me?" Pelfrey said that he would "give you [Movant] your little loan or whatever," and "then we'll talk . . .  I'll let you see her, check her out and then ah, we'll go from there." Movant responded, "That's cool. I'm gonna' appreciate you too."

On September 13, 2017, Movant arrived at Whataburger on foot, approached Pelfrey's vehicle, and got in.  Pelfrey said that his girl would be arriving soon and that he had enough money for two hotel rooms for three nights. Pelfrey asked Movant whether he already had it set up so that they could have money rolling in right away, and Movant replied, "Immediately . . . as soon as we bring the girls here."  According to Pelfrey, Movant explained that "he has licks and/or customers that he knows personally as friends or clientele that he can reach right away to have the money coming in directly." At that point, Movant physically scrolled through texts on his cell phone and showed Pelfrey the clients that he had lined up. He then "schooled" Pelfrey on how the hustle works, stating that prices were $100 for a quick visit, $150 for a half hour, and $250 for a full hour. Movant said the clients would be asking the rates, and "[y]ou're the one that's supposed to be texting." Movant explained that all they had to do was set up the clients and "just sit back" and protect the prostitutes.

Movant alerted Pelfrey as a car pulled up next to their vehicle. The driver was a female undercover officer with the CCPD Internet Crimes Against Children Unit, and the "other girl to be pimped out" was an undercover officer who was selected to pose as a 14-

---

3.  Pelfrey testified that pimps would try to get the back corner rooms at the Red Roof Inn, which was less obvious from the freeway and where "they can actually see law enforcement coming in from either direction."

year-old girl because she appeared to be very young. Movant watched the female passenger (identified in the indictment as "Jane Doe") exit the vehicle and stand in front of Pelfrey's vehicle so that her full appearance from head to toe could be seen. Movant said she was pretty and that this would be a "half and half thing," meaning that the girl gets half the money and the pimp gets the other half.

Pelfrey and Movant then discussed Jane Doe's age. When Pelfrey told Movant that Jane Doe told him she was 14, Movant replied, "That's gonna' be a hard one cuz." Pelfrey agreed that they could not "put it out there" that Jane Doe was 14, but added "she looks young." Pelfrey asked whether they could say "young girl" and told Movant to tell him the price. Movant replied that they could "post her up," "[t]hey're gonna' pay top dollar for her," and "[e]very lick's a risk." When Pelfrey asked, "A risk for who?", Movant replied that, based on the girl's young age and her coming from another state, that's "sex trafficking." Movant expressed concern about advertising Jane Doe on Backpage because of law enforcement detection, stating, "If the girl tells her age or they run her name and she comes back 14 years old, then 'Bam!'" Movant said that he had been raided before and relayed the commonly used excuses in commercial sex trafficking to avoid law enforcement detection, such as "massage and/or no sexual favors." When Pelfrey asked how much they could make off Jane Doe in two days, Movant responded $10,000. When Pelfrey asked whether Movant thought they "can make the money f---ing and get the f--- out of here," Movant said, "Yeah." Pelfrey then told Movant he was going to get the hotel rooms.

6

After discussing a separate drug deal, the conversation turned back to prostituting Jane Doe. Movant stated that he could get his previous trustworthy prostitution customers to meet Jane Doe, that she could maybe work four hours and make $1,000, and that he would teach her the game and be safe about it. Movant stated, "I'm gonna' school her on everything," and explained that Jane Doe may develop "sugar daddies" who would take care of her, but for the time being they should work on contacting his prior customers. Movant explained that the profits of the prostitution were to be split 50/50 between Pelfrey and Jane Doe, and that he would take 10% from the girl and 10% from Pelfrey, for a total of 20% per transaction. Movant also said that he was "legit" and would teach Pelfrey, who was new to the "pimp game." The two agreed to get some drugs to use, and the discussion ended with Pelfrey telling Movant, "All right, let's go f---ing grab that f---ing grub real quick then . . . we'll go to that room and get that s--- taken care of. They're over there [] waiting for us." Movant replied "alright" as he exited the vehicle and moved in Pelfrey's direction. Movant was then immediately arrested by law enforcement.

Movant testified that he only went along with Pelfrey's prostitution scheme because he intended to rob the officer instead. Movant denied that he had previously been involved in prostitution and denied that he intended to prostitute Jane Doe. At closing, defense counsel argued that the Government failed to prove beyond a reasonable doubt that Movant intended to commit a predicate offense under § 1591(a) or that he took a substantial step towards the commission of the crime: Movant never transported Jane Doe, never harbored her in a hotel room, never advertised her anywhere on social media or by word-of-mouth, and never gained any money from any sex act.

In its Order Following Bench Trial, the Court found:

> Defendant Marcus Anthony Tunchez is charged by a single-count indictment (D.E. 5) with attempted sex trafficking of a minor in violation of 18 U.S.C. §§ 1591(a)(1), (b)(1) and (2), and 1594(a). The defendant waived his right to a jury trial in writing (D.E. 17), and a bench trial was held on December 14, 2017. The Court is not required to make specific findings of fact because neither party requested it to do so. *See* FED. R. CRIM. P. 23(c).
>
> After due consideration of the evidence, including the testimony of the defendant, the Court finds the defendant GUILTY of the offense charged in the indictment.
>
> The Court finds beyond a reasonable doubt that the defendant (1) intended to commit the offense of sex trafficking of minors; and (2) did an act that constitutes a substantial step towards the commission of that crime and that strongly corroborates the defendant's criminal intent and amounts to more than mere preparation. Specifically, the Court finds beyond a reasonable doubt that (1) the defendant knowingly attempted to recruit, entice, or provide the individual named in the indictment; (2) the defendant committed such acts knowing or in reckless disregard of the fact that that person had not attained the age of 18 years and would be caused to engage in a commercial sex act; and (3) the defendant's acts were in or affected interstate or foreign commerce.

D.E. 24 at 1–2.

The Presentence Investigation Report (PSR, D.E. 35) calculated Movant's base offense level at 30, and two levels were added for obstruction of justice because Movant testified falsely at trial. He was also subject to a one-level multiple count adjustment under U.S.S.G. § 3D1.4.[4] With a criminal history category of III, his Guidelines

---

4. Movant was charged by the grand jury on three separate indictments in 2017. On August 23, 2017, he was indicted in Case No. 2:17-CR-507 for being a convicted felon in possession of a firearm; on September 21, 2017, he was indicted in Case No. 2:17-CR-577 for possession with intent to distribute approximately 8.84 grams of methamphetamine; and on October 11, 2017, he was indicted in the current case for attempted sex trafficking of a

sentencing range was 168 to 210 months' imprisonment. The Court granted defense counsel's motion for a downward variance based on Movant's mental and emotional condition and sentenced him to 151 months, to be followed by ten years' supervised release.[5] Judgment was entered May 22, 2018.

On appeal, Movant challenged the sufficiency of the evidence supporting his conviction. The Fifth Circuit Court of Appeals affirmed his conviction and sentence on June 10, 2019. *United States v. Tunchez*, 772 F. App'x 105 (5th Cir. 2019). Movant filed the current § 2255 motion on May 12, 2020. It is timely.

## II. MOVANT'S ALLEGATIONS

Movant's § 2255 motion raises the following claims:

(1) Trial counsel was ineffective for failing to investigate Movant's key affirmative defense of entrapment, and appellate counsel was ineffective for failing to adequately brief the entrapment issue or raise an ineffective assistance of trial counsel claim on appeal;

(2) The evidence was insufficient to support Movant's conviction based on the affirmative defense of entrapment;

(3) The evidence was insufficient to support Movant's conviction because the Government failed to prove beyond a reasonable doubt that he took a substantial step towards the commission of the crime; and

(4) Movant's Fifth Amendment due process rights were violated because he was prosecuted under 18 U.S.C. § 1591(c), which was not part of the indictment and never "passed by a grand jury."

---

minor. Movant pled guilty to the firearm and methamphetamine charges immediately after the pretrial conference on December 7, 2017. He was sentenced in all three cases at the same time.

     5.  Movant's sentence in the current case was ordered to run concurrently with his sentences in 2:17-CR-507 and 2:17-CR-577, for a total of 151 months' imprisonment.

### III. 18 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

### IV. ANALYSIS

#### A. Grounds 1 & 2: Counsels' Failure to Raise Entrapment Claims

Movant claims that he is actually innocent of attempted sex trafficking of a minor because "the officer's inducement, actions, & suggestions were all acts of entrapment." D.E. 83, p. 5. According to Movant, had trial counsel performed a proper investigation and presented the "key defense of entrapment" at trial, Movant would not have been found guilty. Movant also complains that appellate counsel was ineffective for failing to adequately brief the entrapment issue or raise an ineffective assistance of trial counsel claim on appeal.

##### 1. Ineffective Assistance of Counsel Standard

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong test set forth in *Strickland v. Washington*, 466

U.S. 668, 689 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his or her counsel's performance was both deficient and prejudicial. *Id*. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474–75 (5th Cir. 2001).

In reviewing ineffectiveness claims, "judicial scrutiny of counsel's performance must be highly deferential," and every effort must be made to eliminate "the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. An ineffective assistance claim focuses on "counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct[,]" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Id*. at 689–90. With regard to the prejudice requirement, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694; *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one.").

### 2. Entrapment Standard

Entrapment is an affirmative defense that occurs "when the criminal design originates with the officials of the government, and they implant in the mind of an innocent person *the disposition* to commit the alleged offense and induce its commission

11

in order that they may prosecute." *United States v. Brace*, 145 F.3d 247, 253 (5th Cir. 1998) (en banc) (quoting *Sorrells v. United States*, 287 U.S. 435, 442 (1932)) (emphasis in *Brace*). The defense of entrapment has two related elements: "(1) [the defendant's] lack of predisposition to commit the offense and (2) some governmental involvement and inducement more substantial than simply providing an opportunity or facilities to commit the offense." *United States v. Stephens*, 717 F.3d 440, 444 (5th Cir. 2013) (quoting *United States v. Theagene*, 565 F.3d 911, 918 (5th Cir. 2009)).

The predisposition element focuses on whether the defendant was an "'unwary innocent'" who exercised poor judgment, "or, instead, an 'unwary criminal' who readily availed himself of the opportunity to perpetrate the offense." *United States v. Bradfield*, 113 F.3d 515, 521 (5th Cir. 1997) (citing *Matthews v. United States*, 485 U.S. 58, 63 (1988)). "Stated differently, 'the critical determination in an entrapment defense is whether criminal intent originated with the defendant or with the government agents.'" *United States v. Willis*, 562 F. App'x 249, 252–53 (5th Cir. 2014) (quoting *Bradfield*, 113 F.3d at 521). "In examining a defendant's predisposition to commit the offense, the court is to look at (1) the defendant's 'eagerness to participate in the transaction,' and (2) the defendant's 'ready response to the government's inducement offer.'" *Id.* (quoting *United States v. Chavez*, 119 F.3d 342, 346 (5th Cir. 1997)). "'[E]vidence of the defendant's *ready response to the solicitation*, as well as evidence of *independently motivated behavior* that occurs *after* government solicitation begins, can be used to prove that the defendant was predisposed, *i.e.*, ready and willing to commit the crime even before he

was contacted by the government.'" *Brace*, 145 F.3d at 262 (quoting *United States v. Byrd*, 31 F.3d 1329, 1336 (5th Cir. 1994)) (emphasis in *Brace*).

"'Inducement' is a term of art: it involves elements of governmental overreaching and conduct sufficiently excessive to implant a criminal design in the mind of an otherwise innocent party." *United States v. Daniel*, 3 F.3d 775, 778 (4th Cir. 1993); *see also United States v. Dodson*, 481 F.2d 656, 657 (5th Cir. 1972) ("The criminal design must be implanted by [law enforcement] in the mind of an otherwise innocent person, creating in him the disposition to commit the crime."). Offering a defendant the opportunity to commit the crime does not constitute improper inducement. *United States v. Jackson*, 700 F.2d 181, 192 (5th Cir. 1983). Likewise, affording a defendant the facilities for the commission of the offense is in itself insufficient to establish inducement. *Bradfield*, 113 F.3d at 522. "A straightforward offer to enjoy the spoils of a crime does not, standing alone, 'create a substantial risk that an offense would be committed by a person other than one ready to commit it.'" *United States v. Rodriguez*, 603 F. App'x 306, 316 (5th Cir. 2015) (quoting *Bradfield*, 113 F.3d at 521). The Government's use of a reverse-sting operation also does not itself constitute inducement. *See United States v. Gutierrez*, 343 F.3d 415, 420 (5th Cir. 2003) ("It is proper (*i.e.*, not an 'inducement') for the government to use a 'sting,' at least where it amounts to providing a defendant with an 'opportunity' to commit a crime.").

### 3. Analysis

#### a. Ineffective Assistance of Trial Counsel

Movant first alleges that trial counsel failed to properly investigate and present the key affirmative defense of entrapment. Under *Strickland*, a petitioner "who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (citing *Alexander v. McCotter*, 775 F.2d 595 (5th Cir. 1985)); *see also United States v. Bernard*, 762 F.3d 467, 472 (5th Cir. 2014).

Movant argues that Pelfrey manipulated him into the Whataburger meeting by promising him a $300 loan, only to set him up with a female not identified as a minor beforehand. Movant also complains that Pelfrey never offered him the opportunity to back out of the scheme. The facts identified by Movant are not newly discovered; they were known to counsel at trial. Movant "has failed to suggest with specificity what exculpatory evidence could have been uncovered by a more thorough investigation by his counsel, and has failed to show that counsel's [purported] failure to follow up on his leads was unreasonable." *See Green*, 882 F.2d at 1002. Instead, the numerous audio and video recordings offered at trial clearly established Movant's predisposition to engage in commercial sex trafficking before and on September 13, 2017.

"The government's provision of aid, incentive, and opportunity to commit the crime does not amount to entrapment unless it appears that the 'defendant has done that which he would never have done were it not for the inducement of Government

14

operatives.'" *United States v. Yater*, 756 F.2d 1058, 1062–63 (5th Cir. 1985) (quoting *United States v. Bower*, 575 F.2d 499, 504 (5th Cir. 1978)). The record shows that Movant had extensive involvement in the sex trade—including three girls he currently pimped out, contact information for trustworthy customers, knowledge of pricing schemes, and experience using Backpage—before he ever met Pelfrey. As the Fifth Circuit reasoned in affirming Movant's conviction, "Tunchez admits that he showed up as planned at a Whataburger to discuss a prostitution transaction with Officer Jaime Pelfrey, who was working undercover. . . . Though Tunchez may not have known beforehand that Officer Pelfrey had arranged for a minor (identified in the indictment as Jane Doe) to come to Texas, the record reflects that Tunchez fully considered Jane Doe's age and agreed to continue with the prostitution scheme." *United States v. Tunchez*, 772 F. App'x 105, 105 (5th Cir. 2019). Movant has also cited no authority for his claim that Pelfrey was required to explicitly give Movant the opportunity to "back out" of their prostitution scheme.

Finally, the Government informed the Court that it had given notice to the defense of rebuttal evidence under FED. R. EVID. 404(b) concerning a prior incident involving Movant and his brother prostituting young girls, at least one of who was 15 years old, which Movant argued should not be considered. Instead of opening the door to this 404(b) evidence by asserting an entrapment defense, trial counsel argued that the Government failed to prove beyond a reasonable doubt that Movant intended to commit a predicate offense under § 1591(a) or that he took a substantial step towards the commission of the crime. Trial counsel's decisions constitute the type of "strategic

15

choices made after thorough investigation of law and facts" that "are virtually unchallengeable" in an ineffective assistance of counsel claim. *See Strickland*, 466 U.S. at 690.

The Court finds that trial counsel's representation was neither deficient nor prejudicial.

### b. Ineffective Assistance of Appellate Counsel

#### i. Failure to Raise Ineffective Assistance of Trial Counsel Claim

Movant alleges that appellate counsel was ineffective because he failed to raise a claim that trial counsel was ineffective for failing to raise an entrapment defense. "The general rule in [the Fifth C]ircuit is that claims of ineffective assistance will not be considered on direct appeal 'when, as here, it was not raised in the district court, because there has been no opportunity to develop record evidence on the merits of the claim.'" *United States v. Miller*, 406 F.3d 323, 335–36 (5th Cir. 2005) (quoting *United States v. Lampazianie*, 251 F.3d 519, 527 (5th Cir. 2001)). Appellate counsel was not ineffective for failing to raise an ineffective assistance of trial counsel claim on appeal.

#### ii. Failure to Adequately Brief Entrapment Issue

Movant argued on appeal "that there was no evidence that he had any 'predisposition to prostitute children,' which he claims 'not only calls into doubt his criminal intent to violate § 1591(a), (b)[,] but also amounts to Government entrapment.'" *Tunchez*, 772 F. App'x at 106. The Fifth Circuit found that Movant had made "only a passing reference to entrapment as a defense, and he cites no legal authority to support his claim. Because Tunchez has failed to adequately brief his claim of entrapment, he has

16

abandoned it." *Id.* As set forth above, an entrapment defense was unavailable to Movant. Appellate counsel was therefore not ineffective for failing to fully brief this issue on appeal.

Accordingly, Grounds 1 and 2 are denied.

### B. Ground 3: Insufficient Evidence of a Substantial Step

Movant next claims that the evidence was insufficient to support his conviction because the Government failed to prove beyond a reasonable doubt that he took a substantial step towards the commission of the crime.

On appeal, Movant "challenge[d] the sufficiency of the evidence supporting his conviction, arguing that the Government failed to prove beyond a reasonable doubt that he intended to commit the predicate offense under § 1591(a) and that he took a 'substantial step' toward the commission of that crime." *Tunchez*, 772 F. App'x at 105. In rejecting this claim, the Fifth Circuit wrote, "Any argument that Tunchez's conduct constituted no more than 'despicable lawful conduct' rather than a substantial step toward the underlying offense of sex trafficking of a minor is belied by the record." *Id.*

Because this claim was already raised and denied on direct appeal, Movant may not relitigate it now in a § 2255 motion. *See United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) ("It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions."). Accordingly, Ground 3 is denied.

### C. Ground 4: Fifth Amendment Due Process Violation

Finally, Movant alleges that his Fifth Amendment due process rights were violated because he was prosecuted under 18 U.S.C. § 1591(c), which was not part of the indictment and never "passed by a grand jury." D.E. 83, p. 8.[6]  Relying on 18 U.S.C. § 1591(c), Movant argued on appeal that his "'brief opportunity' to observe Jane Doe did not relieve the Government of its burden to prove her actual age." *Tunchez*, 772 F. App'x at 106. The Fifth Circuit determined, however, that the "Government sufficiently proved that Tunchez knew or at least recklessly disregarded Jane Doe's age as required under § 1591(a)." *Id*. Because this claim was already raised and denied on direct appeal, Movant may not relitigate it now in a § 2255 motion. *See Kalish*, 780 F.2d at 508. Accordingly, Ground 4 is denied.

## V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Movant has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." RULE 11, § 2255 RULES.

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under

---

6.  "(c) In a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person so recruited, enticed, harbored, transported, provided, obtained, maintained, patronized, or solicited, the Government need not prove that the defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years." 18 U.S.C. § 1591(c).

§ 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As for claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483–84).

Based on the above standards, the Court concludes that Movant is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. *See Jones*, 287 F.3d at 329.

## VI. CONCLUSION

For the foregoing reasons, the Government's Motion to Deny Relief Under Rule 8(a), 28 U.S.C. Foll. § 2255 (D.E. 90) is **GRANTED**; Movant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 83) is **DENIED**; and Movant is **DENIED** a Certificate of Appealability.

19

**ORDERED** on this 25th day of February 2021.


NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE